## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**PRESTON A. McLAIN,**

　　　　　**Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　**Case No.  8:06-cv-2156-T-TBM**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of the United States**
**Social Security Administration,**

　　　　　**Defendant.**

_____/


## O R D E R

　　　　The Plaintiff seeks judicial review of the denial of his claim for Social Security

disability benefits and Supplemental Security Income payments.  For the reasons set out

herein, the decision is reversed and remanded.


## I.

　　　　Plaintiff was forty-five years of age at the time of his administrative hearing in

January 2005.  He stands 5', 7½" tall and weighed 119 pounds.  Plaintiff has an eleventh

grade education with a GED.  His past relevant work was as a carpenter and dry wall installer.

Plaintiff applied for disability benefits and Supplemental Security Income payments in July

---

　　　　[1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007.
Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should
be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

2002, alleging disability as of July 12, 1997,[2] by reason of the residual effects of two brain surgeries, epilepsy, seizures, psychosis, limited memory, depression and anxiety, anger, pain, weakness, and abdominal problems.  The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ").  The Plaintiff was represented at the hearing by counsel and testified in his own behalf.  Additionally, he called a friend as a witness and the ALJ took testimony from a vocational expert.

In essence, Plaintiff testified he was unable to maintain any employment because of seizures, epilepsy, anger, generalized weakness, an inability to use his hands like he used to, and a bad back, knees, and shoulder.  According to the Plaintiff, he had two brain surgeries in 1993 and has not been the same since.  He claims that he is unable to control his temper, and when under pressure, he snaps out at others or has epileptic seizures.  According to his testimony, he has not worked or sought employment since April 2002 because he is fearful he will have seizures.  Plaintiff stated he has four to six seizures a month if he is stressed and less if there is no stress.  The seizures range in severity from full convulsive blackouts to less violent seizures.  In any event, the seizures leave him confused for forty-five minutes to an hour and he will sleep afterwards for one to two hours.  Plaintiff has tried a number of medications for his seizures, but none have stopped the seizures and he remains angry.  He also claims to have abdominal problems caused by the loss of most of his colon.  By his testimony, he has to use a bathroom frequently, especially after eating.  He further claims

---

[2]The alleged onset date was subsequently amended to April 1, 2002, to better comport with his work history.

constant headaches, problems with hearing, difficulty reaching out with his arms due to problems throughout his spine, a fractured hip, and knees that were "busted up." He also claims arthritis in his fingers which makes it hard for him to pick up things or manipulate smaller objects. He also complains of very poor memory and concentration. His depression leaves him with thoughts of suicide and he describes his anxiety as like a "string ready to snap." He claims his condition makes him very edgy and nervous and he sometimes feels like he cannot breathe. He has constant nightmares of his father beating him or his mother. He has difficulty sleeping. He used to drink a six-pack of beer a day to help him sleep, but Seroquel now has helped him a little in that regard. He indicates that he has no side-effects from his medications.

At the time of the hearing, Plaintiff indicated he was living on a boat. On a daily basis, he gets up and walks to "Resurrection House," which is where he washes his clothes and seeks food and assistance. At lunch, he walks to the soup kitchen and thereafter back to the boat. He avoids social contact because he does not believe he can control himself or his emotions and he might hurt someone. For a period of time since he applied for benefits, Plaintiff was in jail or prison. He blames his problems on his brain surgeries and the fact that he cannot control his temper. Regarding his physical ability, Plaintiff testified that sitting in a chair hurts his back. He can stand for twenty to thirty minutes without leaning on something, then he has to move about or sit. He estimated he can walk four to five blocks on a cool day but only two or three if it is hot. Lifting a gallon of milk causes his arms to shake. Plaintiff claims his weight has dropped from 165 pounds to 115 pounds and left him very weak. (R. 388-406).

3

Jack Martin, Jr., testified he had known Plaintiff for about seven months and was living on the same boat at the time of the hearing.  He has witnessed Plaintiff's seizures and one week witnessed three.  He described Plaintiff being out of it after one seizure.  Stress, pressure, and people asking him things seem to bring on the seizures.  He gets confused and does not know where he is or who he is.  The witness had seen Plaintiff drink in the past, a couple of months earlier, to help him sleep, but he was not drinking at the time of the hearing.  The witness had not seen Plaintiff lose his temper, but had seen him confused and "come up swinging" out of seizures and sleep.  *See* (R. 406-09).

The ALJ then took testimony from Joyce Courtright, a vocational expert ("VE").  The VE testified on an assumption of an individual with a high school equivalency degree capable of light exertional work but no exposure to ladders, ropes, or scaffolds, no driving, and no exposure to unguarded heights and unsupervised swing (sic).[3]  By this assumption, such individual could not perform Plaintiff's past work but could work as a small parts assembler, cashier II, and wrapping and packing worker.  On a further assumption that the individual was limited to simple tasks and only occasional interaction with the public, the VE opined that such person could not do Plaintiff's past work but could still perform the assembly job, the wrapping and packaging job, and could work as a marker.  On an additional assumption that the individual, because of seizures and mental limitations, would be required to miss three or four days of work each month, there would be no work available.

---

[3]In the decision, this is clarified as "swimming."  (R. 27).

On questioning by Plaintiff's counsel,[4] the witness testified that if Plaintiff had no useful ability to remember procedures then he would be unable to perform work-like procedures.  Further, if he could only "some of the time," that is, less than half the time, carry out short simple instructions, the VE opined that there likely would be no jobs available to him.  If an individual was unable to perform activities within a schedule, maintain regular attendance, or be punctual to the degree that he had no useful ability to function, then he would be unable to work.  Similarly, if he was unable to accept instructions and respond appropriately to criticism he could not sustain substantial gainful activity.  Relying on the same exhibit to support the hypothetical, the VE agreed with counsel that if an individual was unable to even occasionally use his hands, then he would lack the skills to do the work previously identified.  *See* (R. 409-16).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are set forth herein as necessary.

By his decision of August 26, 2005, the ALJ determined that while Plaintiff has severe impairments related to seizures and depression, he nonetheless had the residual functional capacity to perform light exertional work that required only simple repetitive tasks and occasional interaction with the public and that did not require climbing ladders, ropes, and scaffolds, working around unguarded heights, unsupervised swimming, or driving.  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy.  Upon this conclusion, the Plaintiff was

---

[4]As indicated at the hearing, counsel employed limitations set forth on a medical source statement by Scott Franczek, M.D., a neurologist.  *See* (R. 316-19).

5

determined to be not disabled.  (R.18-30).  The Appeals Council denied Plaintiff's request for review.

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises five claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1) The ALJ's residual functional capacity assessment is not based upon substantial evidence;

(2) The Commissioner failed to accord proper weight to the opinions of the treating specialists;

(3) The ALJ's hypothetical questions to the vocational expert were inaudible and incomplete;

(4) The ALJ failed to sustain his burden of proof establishing that there is other work in the national economy that Plaintiff can perform; and

(5) The ALJ ignored the vocational expert's opinion that there are no jobs which the Plaintiff could perform.

The first two claims are related and are discussed together.  By his first claim, Plaintiff urges that the ALJ failed to reference any evidence that supported his residual functional capacity ("RFC") assessment.[5]  By this argument, the decision does not permit one to know what evidence was or was not considered.  Given that the RFC assessment is to be based on all of the evidence and the treating neurologist stated that Plaintiff had no useful ability to remember work procedures, understand and remember simple instructions, maintain attention and concentration, conform with any schedule, maintain regular attendance, not be distracted by other workers, complete a work day or work week, perform at a consistent pace, interact with the public, ask assistance, respond appropriately to criticism from supervisors and get along with co-workers, respond to changes, be aware of hazards, travel in unfamiliar places, and set realistic goals, the ALJ's RFC conclusions are unsupported.

By his second claim, Plaintiff urges that the ALJ failed to articulate specific reasons for discrediting the opinions concerning Plaintiff's mental RFC from treating neurologist Dr. Franczek.  Plaintiff maintains that the reasons proffered by the ALJ, i.e., Dr. Franczek does not specialize in the treatment of mental impairments and that his opinions were not

---

[5]In the lead-up to this argument, Plaintiff accuses the ALJ of misrepresenting the record and/or ignoring certain of the facts or testimony.  *See* (Doc. 14 at 10-15).

consistent with the findings of the consultative psychologist, Dr. Maureen O'Harra Ph.D., are simply incorrect.  Counsel urges that Dr. Franczek is both a neurologist and psychologist whose qualifications far exceed those of the consultative psychologist, Dr. O'Harra.  Further, the conclusions of Dr. O'Harra are more consistent with those of Dr. Franczek than inconsistent.  Additionally, other evidence of Plaintiff's mental limitations support Dr. Franczek's conclusions.  In these circumstances, the opinion of Dr. Franczek was entitled to substantial or considerable weight and has not been properly discounted given the testimony that Plaintiff is unable to perform any work as confirmed by the VE.

In general terms, the RFC assessment identifies the most an individual can do despite his impairments.  *See* 20 C.F.R. §§ 404.1545, 416.945.  The assessment involves consideration of all the relevant medical and other evidence of record as well as the claimant's ability to meet the physical, mental, and sensory and other requirements of work.  *Id.*  Citing Social Security Ruling (SSR) 96-8p,[6] Plaintiff urges that it is impossible to tell how the ALJ arrived at his RFC assessment in this case given the lack of narrative or other discussion identifying the evidence relied upon in determining Plaintiff's RFC.  Contrary to SSR 96-8p, the RFC could not have been based on *all* the evidence, as required, since there is no discussion of Dr. Franczek's assessment of Plaintiff's mental functional capacity in connection with the RFC.  By the Plaintiff's argument, in light of that assessment, the ALJ's RFC assessment is unsupported by, and contrary to, the evidence.  Thus, since Dr. Franczek's

---

[6]Social Security Rulings are agency rulings issued to clarify regulation and policy and are binding on all components of the Administration.  *Sullivan v. Zerby*, 493 U.S. 521, 530 n.9 (1990).  In this circuit, these interpretations are entitled to deference.  *Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994).

assessment is entitled to controlling weight, Plaintiff is disabled and he is entitled to a reversal and award of benefits.

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053. Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Here, Plaintiff complains that the doctor's assessment was ignored, and to the extent the ALJ sought to discredit it, he failed to do so with valid reasons.

Although these claims are not resolved without some difficulty, I conclude Plaintiff is not entitled to relief on either. Based on my own review of the medical record, it is apparent that the ALJ has fairly reviewed and considered the whole of the medical evidence and the other evidence of record, including Plaintiff's subjective claims, in arriving at both

the physical and mental RFC assessments of Plaintiff.  Despite concluding that there really

was little objective and clinical support for severe physically limiting impairments, the ALJ

gave Plaintiff the benefit of the doubt and credited him with the same to the extent that he

could perform the demands of light exertional work with limitations.  This assessment is

clearly based on a thorough review of the medical evidence and there is more than adequate

narrative and support therein to satisfy SSR 96-8p.[7]  The more difficult issue relates to

Plaintiff's mental, emotional and social capacity to work.  As Plaintiff urges, resolution of this

issue turns on whether the ALJ appropriately discounted Dr. Franczek's assessment of

Plaintiff's mental status as such is set forth in a form captioned "Medical Source Statement of

Ability to Do Work-Related Activities (Mental).[8]  Contrary to Plaintiff's urging, I find that

the ALJ stated adequate reasons to discount Dr. Franczek's opinions.  Although Plaintiff

contends that the ALJ improperly discounted Dr. Franczek's opinion on the basis that the

---

[7]Here, the ALJ credited the medical reports from the hospital and prison; the report of
the consultative evaluator, Dr. Patrick A. Ijewere; and the progress notes of Dr. Franczek.
*See* (R. 26).  Although not clearly articulated, the ALJ also credited the limitations set forth in
the nonexamining doctor's RFC form to the extent that Plaintiff must avoid climbing ladders,
ropes, and scaffolds; driving; unguarded heights; and unsupervised swimming.  *Compare* (R.
29) *with* (R. 303, 305).  To the extent that the ALJ discounted the findings set forth in a form
captioned "Physician's Report of Physical Capacity – Upper Extremity Only" (R. 319), which
was completed by Dr. Franczek In February 2004, he clearly could do so on the basis of other
inconsistent findings suggested in the medical record.  Dr. Franczek's findings are also
unsupported by his own treatment records.  *Compare* (R. 319) *with* (R. 320-33).

[8]This form has two primary questions.  The first relates to Plaintiff's ability to
understand, remember, and carry out instructions and contains twelve factors.  The second
relates to Plaintiff's ability to respond appropriately to supervision, co-workers, and work
pressure and contains ten factors.  Dr. Franczek opined that Plaintiff's ability in the first
category was poor in ten of the twelve areas, with poor defined as "no useful ability to
function. (R. 316).  In the second category, the doctor opined that Plaintiff's ability was poor
in eight of the ten areas. (R. 317).  In essence, this assessment equates with an inability to
work due to mental limitations.

doctor did not specialize in the treatment of mental impairments, the evidence before the ALJ

did not establish that Dr. Franczek held a Ph.D. in psychology.  According to this doctor's

treatment notes, he was a physician who specialized in neurology (R. 317, 319) and he

worked at a seizure disorder clinic (R. 329, 331).  Although a note the doctor signed indicated

that he was a M.D., Ph.D., *see* (R. 322), I am unable to find record evidence identifying him

as having a doctorate degree in psychology.  As such, the ALJ cannot be faulted for failing to

recognize such, assuming it is true.  Moreover, Dr. Franczek's treatment notes reveal that he

treated Plaintiff primarily for epilepsy.  *See* (R. 320-33).  The documented psychiatric

treatment was limited solely to prescribing medication.[9]  The ALJ's other stated reason,

namely, that Dr. Franczek's findings were inconsistent with other evidence of record, is

adequately supported.  Contrary to Plaintiff's assertion, Dr. Franczek's mental assessment

was inconsistent with the report of the consultative psychological examiner, Dr. O'Harra.

Notably, Dr. O'Harra administered the Wechsler Memory Scale-III and Plaintiff's overall

scores were normal.  (R. 242).  This directly contradicts Dr. Franczek's opinion with regards

to Plaintiff's nine memory-related limitations.[10]  Furthermore, while the consulting

---

[9]Lexapro (an anti-depressant) and Seroquel (a psychotropic drug) were prescribed. While I recognize that Seroquel is typically prescribed for bipolar or schizophrenia, Dr. Franczek's notes reveal it was prescribed for Plaintiff's insomnia.  There is a single notation of psychosis in a note he wrote to the Department of Children and Family Services (R. 322) and a couple complaints by Plaintiff of hearing voices.  However, the treatment notes do not include a diagnosis of a mood disorder or schizophrenia.  Also absent from the doctor's treatment records is any type of therapy or counseling or a referral to someone else for such. Notably, the treatment notes indicate that Plaintiff was alert and oriented, could spell forward and backward, had intact recall and language, and could follow three-step commands.  (R. 330, 332).  As for Plaintiff's complaint of poor memory and confusion, Dr. Franczek attributed it to the medication Keppra, and gradually stopped the drug altogether.  (R. 324).

[10]As for the eight social interaction related limitations, Dr. Franczek indicated that Plaintiff's score on the MMSE (Mini Mental Status Evaluation) and the Thurstone Word

psychologist was troubled by Plaintiff's delayed performance on auditory tasks and diagnosed depression, an anxiety disorder, alcohol dependence, and a personality change due to head trauma (R. 243), no particular restrictions in mental functioning were assessed as a result. In short, the whole of the record, including Plaintiff's testimony, simply does not support the degree of mental limitations identified by Dr. Franczek and the ALJ could reasonably discount Dr. Franczek's assessment on this basis.[11]

Plaintiff's final three claims relate to the testimony of the VE. First, Plaintiff argues that the hypothetical questions the ALJ posed to the VE were inaudible and incomplete. To this end, Plaintiff notes that four portions of the hypothetical question were inaudible and it is not possible to tell whether the ALJ included the restriction in the hypothetical that Plaintiff avoid even moderate exposure to machinery. According to Plaintiff, if it was included, then Plaintiff would be precluded from performing all jobs identified by the VE since all include the use of machinery per the Dictionary of Occupational Titles ("DOT"). Second, Plaintiff argues that he cannot perform the jobs identified by the VE because the ALJ limited him to simple, repetitive tasks which equates to a reasoning level of no more than one and all jobs identified by the VE required a reasoning level of two. Plaintiff also faults the ALJ for failing to resolve this conflict before relying on the VE's testimony. Plaintiff further faults the ALJ

---

Finding Test supported his assessment. However, I am unable to find his reports of such in his progress notes.

[11]Aside from Plaintiff's subjective complaints, records while he was incarcerated also fail to substantiate Dr. Franczek's severe mental limitations. To the extent that Plaintiff contends that the doctor's assessment is supported by the record from Coast Behavioral Healthcare, Inc., (R. 360360-61), the ALJ discounted the report as being based on Plaintiff's report of symptoms and unsubstantiated by testing and clinical findings (R. 28). Plaintiff does not specifically challenge the ALJ's rejection of such.

for finding that he could perform the job of cashier II because the VE eliminated that job due to the restriction that Plaintiff have only occasional interaction with the public.[12]  Lastly, Plaintiff faults the ALJ for ignoring the VE's testimony that no work would be available if he missed three or four days of work each month due to seizures and mental limitations or if the hand limitations and mental limitations identified by Dr. Franczek were credited.

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant.  *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence.  *Id.* at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

After careful consideration of the hearing transcript, the ALJ's decision, and the parties' arguments, I conclude that a remand is required for further explication by the VE. Here, the ALJ found, among other things, that Plaintiff was limited to simple, repetitive tasks. (R. 27, 29).  He included the restriction of "simple tasks" in the second hypothetical question posed to the VE (R. 412).  In response, the VE testified that while Plaintiff's past work could not be performed within that assessment, other work could.  Such other work included a small parts assembler, a marker, and wrapping and packing jobs.  (R. 412-13).  The VE indicated

---

[12]Plaintiff also summarily alleges that the ALJ failed to include all medically determinable impairments in the sequential analysis as required under 20 C.F.R. §§ 404.1523 and 416.923.  According to Plaintiff, the ALJ erred by not including hand tremors, brain atrophy, diarrhea, degenerative disc disease, psychosis, and aggressive personality disorder. (Doc. 22 at 24).

the DOT number for each job as well as the DOT's specific vocational number (SVP).[13]  The

VE did not testify to the reasoning level required for each job.[14]  As reflected in the DOT, the

jobs identified by the VE in response to the pertinent hypothetical question each have a

reasoning level requirement of two.[15]  *See* DOT §§ 739.687-030 (assembler, small products),

920.686-030 (packing-machine can feeder), 209.587-034 (marker).  Given that the ALJ

restricted Plaintiff to simple, repetitive tasks, Plaintiff contends that the reasoning levels

required in these jobs exceed (or may exceed) his ability.  I agree to the extent that this raised

an apparent conflict between the VE's testimony and the DOT.  Pursuant to Social Security

Ruling 00-4p, the ALJ should have asked the VE whether any possible conflict existed

between her testimony and the DOT (irrespective of a lack of inquiry on Plaintiff's part).  He

did not.  In the decision, however, the ALJ indicated that the VE "testified that her testimony

did not conflict with the information contained in the DOT per the requirements of Social

Security Ruling00-4p."  (R. 28).  I disagree.  While VE identified jobs by DOT number, SVP,

and prevalence in the economy, she did not indicate that her testimony was consistent with

the DOT and the ALJ did not explicitly pose that question to her.  *See, e.g.* (R. 411-13).  Nor

---

[13]SVP is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT App. C.

[14]In the DOT, the reasoning level required for a job is one component of the general educational development aspect of a job.

[15] A job rated reasoning level two requires the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations.  Reasoning level one requires the ability to apply commonsense understanding to carry out simple one - or two-step instructions and deal with standardized situations with occasional or no variables in or from these situations encountered on the job.  DOT App. C.

did the VE address the reasoning level required for each job, which is what is at issue here.

Given these omissions, I am unable to find that the VE's testimony provided substantial

evidence on which the ALJ could rely.  Accordingly, remand is required.  *See Hackett v.*

*Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (remanding to ALJ under SSR 00-4p when

apparent conflict between VE's assessment that claimant limited to simple and repetitive

tasks could perform certain jobs that DOT classified as reasoning level three); *Estrada v.*

*Barnhart*, 417 F. Supp. 2d 1299, 1303-04 (M.D. Fla. 2006) (remanding to ALJ to address

apparent unresolved conflict between jobs identified by VE and the DOT's classification of

jobs);

        As for the remaining claims, on the transcript before the court the Commissioner

appears correct that the ALJ did not appear to find that Plaintiff had to avoid even moderate

exposure to machinery and thus it is immaterial whether he included it in the hypothetical

question posed to the VE.[16]  Nonetheless, I remain troubled by the four inaudible sections in

the transcript which occurred during the ALJ's questioning of the VE.[17]  *See* (R. 411).  As for

Plaintiff's claim that the ALJ erred by finding that he could work as a cashier II, I agree.  The

hearing transcript of the VE's testimony supports this; the VE specifically excluded the job of

_____

[16]The ALJ appears to have adopted the environmental limitations identified by the
nonexamining state agency doctor, i.e., no driving and avoid even moderate exposure to
hazards (machinery, heights, etc.).  The consultant noted expressly that the "hazards"
limitations encompassed the avoidance of unguarded heights and unsupervised swimming (R.
305), both of which the ALJ included in the RFC and hypothetical question(s).  However, I
am left to speculate whether he also meant that Plaintiff should avoid even moderate exposure
to machinery.  A reviewing court should not be left to guess at what the ALJ or the VE meant
in such circumstances.

[17]In particular, one of the ALJ's limitations is inaudible as is the VE's response to
whether Plaintiff has transferable skills.

cashier in response to the ALJ's second half of the hypothetical question. *See* (R. 412-13). The error, however, in and of itself, does not warrant a remand given that the VE identified three other jobs Plaintiff ostensibly could perform in response to the ALJ's hypothetical question (R. 412-13). *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error rule to an ALJ's misstatement of evidence in a Social Security case); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (stating that the court will not vacate a judgment unless the substantial rights of a party have been affected); Fed. R. Civ. P. 61. Plaintiff's assertion that the ALJ ignored the VE's testimony that no work would be available if certain limitations were credited is simply not persuasive. Plaintiff ignores that the ALJ did not credit the limitations on which he relies. While an ALJ is obliged to fully incorporate all limitations in his hypothetical questions, he is not obligated to include unsupported subjective restrictions and/or complaints in a hypothetical. *See Howe v. Astrue*, 499 F.3d 835, 842 (8th Cir. 2007) (providing that hypothetical questions need only to include impairments that are supported by the record and that the ALJ accepts as valid); *Clay v. Barnhart*, 417 F.3d 922, 931 (8th Cir. 2005) (noting that ALJ did not err in omitting additional restrictions not supported by the evidence); *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (providing that an ALJ is not required to include in a hypothetical question those limitations he concludes are not credible).

Lastly, although not raised as a separate issue, Plaintiff submits "new" records with his memorandum which he contends should have been included in the administrative file. *See* (Doc. 14 at 7-8 and attachs.). It does not appear that these records were submitted to the ALJ or Appeals Council. Additionally, Plaintiff does not argue that these records warrant a

remand under sentence six of 42 U.S.C. § 405 or address the import, if any, of the Eleventh's Circuit's decision in *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253 (11th Cir. 2007). Accordingly, the records were not considered in deciding Plaintiff's claims.


IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards. The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order. Accordingly, the Clerk is directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 3rd day of March 2008.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

18